## THOMAS DWYER V. N. A. RIPPETOE ET AL.

### No. 2610.

1. **Circumstantial Evidence.**—Such evidence is competent to contradict the direct testimony of a witness to a material fact. See testimony competent and relevant to contradict a witness testifying to the payment of a note sued on before judgment was rendered thereon.

2. **Irrelevancy.**—Where a witness has been examined on the stand and no effort then was made to impeach him, his testimony by depositions previously taken and not disclosing anything material and additional to his oral testimony is irrelevant.

3. **Testimony of Deceased Witness.**—A statement of facts upon a former appeal in the same case is not competent of itself to show the testimony of a deceased witness upon a former trial.

4. **Pendente Lite Purchaser.**—The issue being made on the trial the court properly charged the jury "that if the plaintiff purchased pending the foreclosure suit for the purchase money he was bound by the judgment rendered therein as fully as if he had been a party to the suit," and it was not error to refuse instructions qualifying the rule "as harsh and not to be applied to a purchaser having reasonable cause to believe the lien note was paid, or where there had been any unreasonable delay in the prosecution of the foreclosure suit."

5. **Sheriff's Deed — Recitals.**—A sheriff's sale under a decree foreclosing the vendor's lien upon the land sold conveys the title which the maker of the vendor's lien note took from his vendor. Recitations in the deed otherwise will not restrict the title so conveyed.

6. **Trustee.**—A purchaser of a distinct part of a tract of land does not bear such relation to the entire tract that he is disqualified from purchasing an outstanding title to the entire tract and enforcing such title against another purchaser from the same grantor of another part of the tract out of which the first purchase was made.

7. **Vendor of Lands Incumbered.**—A common vendor of several vendees of parts of a tract of land which is incumbered by a lien owes to *all* his vendees the duty of discharging the liens. The purchasers of parts of the tract do not as between themselves owe to one another any such duty.

8. **Same — Incumbrance on Land.**—The owner of any part of a larger tract would have the right to buy and take up or to pay and discharge an incumbrance upon the entire tract. In the latter case he could enforce contribution against the other part owners; in the former he could enforce it against the land by proceeding to judgment and sale.

9. **Part Owner may Buy at Foreclosure Sale of Entire Tract.**—As judgment in this case was rendered foreclosing the vendor's lien upon the entire tract, the plaintiff not choosing to buy it was of no consequence to him who else should buy; it was therefore no wrong to him that the owner of another part became the purchaser, and others not buying have no grounds of complaint at the purchaser by reason of his purchase.

10. **Judgment—Estoppel.**—The fact that a judgment was rendered upon the purchase money note stands as conclusive evidence against all parties to the suit in which it was rendered in a subsequent contention where the fact is in issue that the debt for which the judgment was rendered had not been paid.

11. **Payment—Purchase of Note in Suit.**—See evidence held sufficient to sustain a purchase rather than a payment and discharge of a note while in suit.

12. **Immaterial Error.**—Where the court below erroneously sustains exceptions to the pleadings as against one or more defendants resulting in a dismissal as to him or them, and it appears in the subsequent proceedings that no recovery could have been had against those benefited by the ruling, the error on appeal will be regarded as harmless and as no ground for reversal.

APPEAL from Washington.    Tried below before Hon. I. B. McFarland.
The opinion states the case.

*Bassett, Muse & Muse,* for appellant. —1.    The court erred in sus-
taining the exceptions of the defendants, I. M. Onins and D. C. Gid-
dings and the executors and heirs of J. D. Giddings, deceased, to the
plaintiff's petition, and in dismissing the suit as to said defendants.    It
is submitted:

First.    The objection that it was not alleged that Rippetoe held in
trust for his said co-defendants was not supported by the record.

Second.    Upon the allegations of the petition said defendants, *cestuis
que trustent* under Rippetoe's purchase, were proper though not neces-
sary parties to the suit.    The plaintiff was not bound to rely solely on
Rippetoe's solvency for his rents and damages, but might look also to
those for and with whom he was acting.

Third.    Upon the facts alleged said defendants had such possession of
the premises as would make the statutes of limitations available to them.

Fourth.    On the allegations of the petition the plaintiff had the supe-
rior legal title, and the doctrine of laches had no application.

2.    The court erred in admitting the testimony of the defendants'
witnesses, D. C. Giddings and R. D. Harris, over the plaintiff's objec-
tions as shown by his second bill of exceptions.    We submit:

First.    That the conduct of J. D. Giddings, which would amount at
most to a declaration by conduct that the debt was unpaid, was hearsay
and inadmissible.    1 Whart. on Ev., secs. 172, 175; 1 Greenl. on Ev.,
secs. 99, 124.

Second.    The books of Giddings & Onins, had they been produced,
would not have been admissible.    Baldridge v. Penland, 68 Texas, 445.

Third.    But if competent at all they were the best evidence of their
own contents; and it was error to admit secondary evidence of what they
contained or did not contain, the original being accessible.    1 Greenl. on
Ev., sec. 88.

Fourth.    The testimony of Harris was wholly irrelevant and tended
to confuse the jury.

Fifth.    If so much of it as related to the letter of Pressley was offered
as impeaching testimony no proper predicate had been laid for it; and
moreover the contradiction if any was as to an immaterial issue.    1
Greenl. on Ev., sec. 462 *et seq*.

3.    The court erred in sustaining the defendants' objections to the ex-
cluded portions of W. B. Pressley's testimony and the several deeds
offered in connection therewith as shown by the plaintiff's first bill of
exceptions.

4.    The court erred in excluding from the jury under the circum-
stances shown in plaintiff's third bill of exceptions the testimony of the

defendant A. H. Rippetoe as a witness on a former trial of the case, as said testimony is found in the agreed statement of facts on appeal signed by counsel for both parties and approved by the court and constituting a part of the record of the cause, it appearing that the witness had since died and that his testimony could not be otherwise satisfactorily reproduced. Rev. Stats., arts. 1377–1378; Rippetoe v. Dwyer, 65 Texas, 703; 1 Greenl. on Ev., sec. 166.

5.   The evidence tending to show that the case of Testard to the use of Lowery v. Pressley and Perryman was not prosecuted with due diligence so as to make the judgment afterward rendered binding on innocent purchasers pending the suit, the court erred in its general charge and in the special charges given at the request of the defendant in ignoring the question of laches in the prosecution of said suit.

6.   First.   The doctrine of *lis pendens* is a harsh one, which the courts gladly avail themselves of any substantial grounds to avoid, and which they will only enforce where the litigation is bona fide and has been closely prosecuted; and in this case the suit of Testard, use, etc., v. Pressley, not having been prosecuted closely and continuously, and the proceedings and judgment being tainted with the suspicion of collusion and fraud, the plaintiff Dwyer ought not to be thereby concluded.   Freem. on Judg., sec. 202; 3 Sugd. on Vend., 459; Herm. on Ex., sec. 331; Bump on Fraud. Con., 500; Wade on Notice, secs. 341, 350, 357, 358, 359, 367; Fox v. Reedler, 28 Ohio St., 189, 190; Lessee of Twomble v. Boothby, 14 Ohio, 109; Ehrman v. Kendrick, 1 Metc. (Ky.), 146.

Second.   If not entitled to claim immunity against the judgment as matter of law, as suggested in the sixth refused charge, the matter should have been submitted to the jury as requested.

7.   The sheriff having only levied on and sold and conveyed to the defendant Rippetoe such estate, right, title, and interest in the lots described therein as Pressley and Perryman had on the seventeenth and twenty-fourth days of October, 1870, and it appearing from the record evidence in the case that Perryman had never had any interest in the premises sued for, and that Pressley had parted with all his estate, right, title, and interest therein long prior to the said date, the court erred in assuming as it did in the general charge and in special charges given at the defendant's request that the sheriff's deed vested title to the premises in controversy in the defendant Rippetoe, and in refusing the second special charge requested by the plaintiff as to the effect of said deed.

First.   The effect of the sheriff's deed can not be varied by parol.   1 Greenl. on Ev., secs. 281, 275, *et seq.*

Second.   It was competent for the holders of the notes who were controlling the suits to abandon their lien altogether.   Murphy v. Johnson, 17 Texas, 216; Gentry v. Lockett, 37 Texas, 503; Cook v. Love, 33 Texas, 487; Toland v. Swearingen, 39 Texas, 447, 454–455.   So they could have

abandoned it in part and limited the foreclosure to such property as remained in Pressley and Perryman when the judgments were taken (Wade on Notice, sec. 367), and whether this was done by accident or design the purchaser under such execution would take no higher right. The right, title, and interest which Pressley and Perryman had in the lots sold on the seventeenth and twenty-fourth days of October, 1870, was all that was levied on, advertised, or sold; it was all that *pendente lite* purchasers and competing bidders could suppose would be sold, and this very fact may explain why the sale produced only $100 in currency when the property claimed by the defendant under his purchase was worth $3000 or $4000 in gold.

Third. To avoid the harsh consequences of the doctrine of *lis pendens* as against an innocent purchaser who had paid out his money in good faith a court of equity will if necessary avail itself of the circumstance that the judgment and sheriff's deed do not purport to convey the premises in controversy. 3 Sugden on Vendors, *supra;* Freeman on Judgments, *supra.*

8. It appearing from the evidence that the plaintiff and the defendant Rippetoe were purchasers of different parcels of premises the whole of which were subject to the common encumbrance of the vendor's lien, and that the rights of one must necessarily be sacrificed by a purchase by the other of the whole property at the foreclosure sale, and that the rights of both could be protected by an equitable contribution toward the discharge of the common encumbrance and not otherwise, the court erred in refusing to so instruct the jury as requested by the plaintiff. 1 Story's Eq. Jur., sec. 477; 2 Story's Eq. Jur., sec. 1233a; Gearhart v. Jordan, 1 Jones, 325. This case is cited from a digest, but is believed to be pertinent.

9. The plaintiff's evidence tending to show that prior to the rendition of the judgments in the cases of Testard to the use of Lowery v. Pressley and Perryman, and Harris v. Pressley and Perryman, the vendor's lien notes therein sued on had been paid off by Pflughaupt and Perryman, whereby said vendor's lien was discharged as to purchasers under said judgments having notice of such payment, and the evidence tending to charge the defendant Rippetoe and his associates with notice of said payment at and prior to his purchase at the sheriff's sale, the court erred in confining the charge to an assumed purchase of the notes by Pflughaupt and their transfer to him, as was done in the special charges given at defendants' request, and in refusing the special charges requested by the plaintiff presenting to the jury his theory of the evidence.

10. The payment by Pflughaupt under the circumstances stated by him would discharge the lien as to purchasers under the subsequent judgment of foreclosure having notice of the payment (Rippetoe v. Dwyer,

65 Texas, 703, 705, *et seq.*), and there was error in refusing to submit that phase of the evidence to the jury.   Terry v. O'Neal, 71 Texas, 592.

*C. R. Breedlove, Searcy & Garrett,* and *Bryan & Campbell,* for appellees. — 1.   In reply to the appellant's propositions submitted under first assignment, and in support of the ruling of the court sustaining said exceptions, appellees submit:

First.   That plaintiff's action, whatever it may have been at first, is an equitable one to avoid or set aside the sheriff's deed of sale to A. H. Rippetoe and to recover possession of the premises in controversy, and that as to said defendants his cause of action was barred when they first sought to be made parties defendant.

Second.   Said defendants were certainly not necessary parties, and the error, if any, in dismissing them would not be so material as to alone require a reversal of the case.

2.   Under the issue between the direct evidence of W. B. Pressley that he had paid the debt to one who was dead, in the presence of witnesses who were all dead except one who was very old and infirm, and the circumstantial evidence that he had not paid the debt, the business habits of J. D. Giddings as careful or otherwise, the methods of conducting business in the office of Giddings & Onins and the keeping of their books, etc., and all the acts of J. D. Giddings going to show that the debt had not been paid, were all competent evidence.

3.   The fact that the books of Giddings & Onins did not show any evidence of the payment of the judgment alleged to have been paid to a member of the firm who was then dead was admissible, and might be proved by a member of the firm who had examined the books, although it does not appear from the bill of exception that this evidence was objected to because it was secondary.   *   *   *   *   *   *   *   *

4.   It was not error to exclude the statement of facts upon a former trial as evidence of what Rippetoe then swore.   It is a mere certificate or memorandum of certain persons, the judge who tried the case and the attorneys for the parties, as to what the witness testified to, and could only be used to refresh the memory of such of those making it as should undertake to testify as to what the deceased witness said.   T. W. Morris, one of defendants' counsel, was put on the stand by plaintiff, and no doubt used it for such purpose.   There is but little of the evidence contained in the statement that is either pertinent or relevant.   Castleman v. Sherry, 46 Texas, 228; 1 Greenl. on Ev., 166, and notes.

5.   The doctrine of *lis pendens* applies with all its force to the present case.   It was a purchase of real estate pending foreclosure of a vendor's lien thereon and not a purchase of the subject matter in controversy. The special instructions asked by the plaintiff were properly refused because the jury had been sufficiently instructed as to the effect of the pay-

ment of the debt by Pressley and notice to Rippetoe, and the facts did not warrant the instructions asked. Brackenridge v. San Antonio, 39 Texas, 64; Harle v. Langdon's Heirs, 60 Texas, 555.

6. There was no error in the refusal of the court to give the charge asked by the plaintiff in reference to the effect of the sheriff's deed to Rippetoe.

This charge has been passed on by the Commission of Appeals and the question of law embodied in it has been settled for this case by the award of that court made June 21, 1880, adversely to appellant. It is *res judicata* for this case. Posey's U. C., 498.

The recitals in a sheriff's deed that he levied on and sold a particular interest in the land do not conclude the purchaser from showing by the process under which the sale was made, the foreclosure proceedings, and the decree of foreclosure, that a sale of an interest other than that recited in the deed was actually offered for sale and sold. The entire record will be looked to in order to ascertain what was in fact sold and what title passed. Pas. Dig., art. 1480; Rippetoe v. Dwyer, Posey's U. C., 498; Baird v. Trice, 51 Texas, 558; Donnebaum v. Tinsley, 54 Texas, 365; Heirs of Logan v. Pierce, 66 Texas, 127; Rorer on Jud. Sales, sec. 803; Id., sec. 809, and authorities cited.

7. The plaintiff, Thomas Dwyer, bought the lot *pendente lite*. He had no right, equitable or otherwise, to have the sale set aside and the equitable doctrine of marshaling securities or of contribution applied. The law does not favor interlopers. He has placed himself beyond any relief of a court of equity. There was no such fiduciary relation between the parties as would make Rippetoe a trustee for Dwyer in his purchase of the lot in controversy at the sheriff's sale under the foreclosure proceedings. Rippetoe v. Dwyer, 65 Texas, 505; Roberts v. Thorn, 25 Texas, 734.

8. There was no evidence tending to show a purely voluntary payment by Pflughaupt and Perryman of the vendor's lien notes. By reason of their interest in the premises as grantees of Pressley, who had encumbered the same, the payment made by them was a redemption of the entire premises, and they took an equitable assignment of the encumbrance. There is no evidence whatever tending to show a conspiracy between Rippetoe and any one else, or even a design on the part of Rippetoe to acquire the land. 3 Pom. Eq., sec. 1211.

Henry, Associate Justice. — Thomas Dwyer instituted this suit in the year 1873 against A. H. Rippetoe and Julius Tomashefsky to recover a portion of lot 43 in the city of Brenham. The case was before this court on appeal by defendants, and was reversed and remanded in the year 1886.

In 1887 plaintiff filed an amended petition in the form of an action of

trespass to try title, making I. M. Onins, D. C. Giddings, and J. D. Giddings defendants, charging that on the 23d day of February, 1871, while plaintiff was in quiet possession of said premises, the original defendants, "acting for themselves and for and by consent of their co-defendants, with force and arms," etc. The deaths of defendants Rippetoe and J. D. Giddings were suggested and their heirs and legal representatives were cited. Giddings and Onins demurred generally, and by special exceptions pleaded both the statutes of limitations and stale demand.

The original defendants filed a general denial and plea of not guilty, and specially answered in substance as follows:

"That on March 17, 1859, one Browning sold and conveyed to W. B. Pressley lot 43 and part of lot 90 in one parcel, for which Pressley executed his three notes each for $150, and each retaining vendor's lien.

"That on 29th February, 1860, A. Testard as assignee and for the use of Lowery instituted suit on one of said notes in the District Court of Washington County against said Pressley, in which suit judgment was rendered on the 21st April, 1860, for the debt and foreclosing the vendor's lien. The case was taken to the Supreme Court by the defendant, and in 1867 was reversed and remanded. Afterwards H. B. Perryman, having purchased part of lot 43 and being in possession (not of the part claimed by plaintiff), was made a party defendant with Pressley. In October, 1870, a judgment was rendered for the plaintiff for his debt, with foreclosure of vendor's lien on all the land sold by Browning to Pressley.

"That in March, 1868, R. D. Harris instituted suit in the District Court against Pressley and Perryman on one other of said notes, and on October 24, 1870, judgment was rendered against Pressley for $118.75, and against both defendants for the foreclosure of vendor's lien on all of the land sold by Browning to Pressley (all of lot 43 and part of lot 90) against both defendants.

"That on February 19, 1861, Pressley conveyed the part of lot 43 now claimed by plaintiff to J. C. Jennings, who on March 16, 1861, conveyed it to plaintiff. On February 19, 1861, Pressley conveyed thirty by ninety feet out of the northeast corner of lot 43 to C. J. Erwin, who on February 27, 1861, sold it to original defendant A. H. Rippetoe, and he on May 16, 1861, sold it to one Prindle, who on August 28, 1863, sold it to W. S. Wilkins, from whom it was purchased on May 23, 1886, by Perryman and Pflughaupt, all of said conveyances being made with warranties of title. The consideration stated in the last mentioned deed was seven hundred and fifty dollars, and that in the deed from Rippetoe to Prindle was seven hundred dollars.

"That said lots lie contiguous to each other, forming one parcel of land.

"About April 16, 1870, Pflughaupt, for the purpose of protecting himself and before judgments were rendered, purchased said notes with the understanding that the suits should be prosecuted to judgment in the

name of the original plaintiff for his benefit. Afterwards and before judgment Swearingen and Onins became the owners of said notes with the right to control said suits, and defendant A. H. Rippetoe, for the purpose of protecting himself and his vendee, purchased of Swearingen and Onins a one-half interest in said notes and suits, paying therefor about $207.

"That after the purchase of said notes by Rippetoe he solicited the parties interested to unite with him and pay off said encumbrances, which they all declined to do, and thereafter on the 28th and 29th days of November, 1870, he caused orders of sale to be issued on said judgments, in pursuance of which the sheriff on the 3d of January, 1871, sold said lots to A. H. Rippetoe, who bid $50 at each sale, which by reason of adverse claims and encumbrances and threatened litigation was all that said lots would bring at a fair sale. The sheriff executed to said Rippetoe a deed for said lots whereby he became invested with the title thereto as it existed in Browning before his sale to Pressley.

"That defendant Tomashefsky was at the date of the filing of plaintiff's original petition the tenant of his codefendant A. H. Rippetoe, and claims no other title; that defendant Rippetoe became seized of the entire legal title, one-half of which he held in trust for Swearingen and Onins; that J. D. Giddings and D. C. Giddings never acquired any interest in said lots until December, 1881, when they purchased a third interest therein; that Swearingen sold his interest to Onins, but the legal title to the whole always remained in A. H. Rippetoe."

Plaintiff filed an amended supplemental petition in which he alleged: "That at the time of filing his suit he was not aware of the title or claim of right under which defendants afterwards undertook to defend this action; that the pleadings filed in this action previous to the trial of this cause on the 16th of September, 1874, consisted alone of the plea of not guilty, and plaintiff did not learn or have opportunity to learn the pretended title under which defendants claimed until it was disclosed through the evidence offered by them at said trial. At said trial a judgment was rendered for plaintiff, which having been appealed from by defendants, the cause was reversed by the Supreme Court and remanded in 1878; that defendants' title first came to his knowledge by their pleadings filed in this court on January 17, 1879, and September 5, 1879. Plaintiff charges that the Harris judgment ought not to have effect against him because the suit in which it was rendered was not instituted until long after plaintiff had purchased the lot owned by him and caused his deed to be recorded. That said sheriff's sale and purchase thereat by the defendant Rippetoe, and all the proceedings anterior thereto upon which said sale purported to be based, were fictitious and void and ought not to avail the defendants or to prejudice the rights of the plaintiff for this, that the said purchase of the defendant Rippetoe, though made in his own

name, was in secret trust for himself and the defendants I. M. Onins, J. D. Giddings, and D. C. Giddings, who were jointly interested with him therein, upon some agreement the exact terms of which are unknown to the plaintiff, whereby the rights of the plaintiff and others were to be sacrificed by said parties under the forms of the law, although they well knew the fictitious character and consequent invalidity of said proceedings, and the defendant Rippetoe's said pretended purchase was made with notice and actual knowledge of the several matters set up in this supplemental petition in relation thereto.

"That the notes upon which said two judgments were rendered were executed by W. B. Pressley to said W. A. Browning in part consideration of the conveyance by said Browning to said Pressley of said lot 43 and part of lot 90 heretofore mentioned; that on or about January 5, 1860, the said Pressley, joined by his wife, by their deed duly executed and recorded, conveyed to one C. J. Erwin all that part of lot 90 which had been conveyed by Browning to Pressley.

"That afterward, on or about February 19, 1861, the said Pressley sold parts of lot 43 above mentioned in severalty to one J. C. Jennings, under whom the plaintiff claims, and to said C. J. Erwin and one George H. Khrone, the deeds to said Erwin and Jennings being executed on the said 19th of February, 1861, and that to said Khrone being executed February 23, 1861.

"That the said Pressley did pay off and discharge the judgment against him in favor of Testard to the use of Lowery, said payment being made to the attorneys of the plaintiff in said suit, to-wit, the aforesaid J. D. and D. C. Giddings and I. M. Onins, who were then partners in the practice of the law, under the firm name of Giddings & Onins, who executed their receipt therefor, and then and there undertook and promised to satisfy said judgment and dismiss said suit, and to procure such further orders therein as should be necessary to protect said Pressley and his vendees; that thereupon said several deeds from said Pressley to said Erwin and Jennings and Khrone were executed and the consideration paid, and said deeds were accepted by the grantees upon the understanding between them and the said Key and the said Giddings & Onins, representing the plaintiff in the Testard-Lowery suits, that the said Testard-Lowery judgment was fully satisfied, of which the defendants had due notice at and before said Rippetoe's pretended purchase at sheriff's sale aforesaid.

"That afterwards, on or about February 28, 1861, the said Erwin by his deed duly executed conveyed to the defendant Rippetoe that part of lot 43 so conveyed to him by said Pressley.

"That after the payment as aforesaid of the Testard-Lowery debt the said Pressley relying thereon and on the promises and undertaking of the plaintiff's counsel therein, and being furthermore insolvent, gave no

further attention to the suit, and the fact of such payment and agreement not having been brought to the attention of the court the said cause proceeded to judgment in the Supreme Court on February 18, 1867, when the judgment of the court below was reversed and the cause remanded for further proceedings; that the mandate of the Supreme Court was issued July 22, 1867, and was filed in this court March 18, 1868, all of which is patent of record; that afterwards one H. B. Perryman (who in conjunction with one A. Pflughaupt had become seized and possessed of the portion of lot 43 which had been conveyed as aforesaid by Erwin to Rippetoe and who held the same by mesne conveyances under a warranty of title from said Rippetoe) was made a party defendant to said suit of Testard to the use of Lowery v. Pressley, and also to the other suit which had been meanwhile filed in the name of Harris, executor of Key, on the other note.

" That in the proceedings in the case of Testard for the use of Lowery v. Pressley and Perryman the plaintiffs were represented by J. D. & D. C. Giddings as their attorneys, while the defendant Perryman was represented by Swearingen & Onins, attorneys, which firm was composed of one P. H. Swearingen and defendant I. M. Onins, who had theretofore been one of the plaintiff's counsel in the last named case, and he the said Onins, as plaintiff believes and charges, alone took part in the practices and proceedings hereinafter alleged, although some or all of them were done and taken in the firm name of Swearingen & Onins.

" That pending said two suits of Testard, use, etc., v. Pressley and Perryman, and Harris v. Pressley and Perryman, both of said notes were again paid off by Perryman and Pflughaupt or one of them to J. D. & D. C. Giddings, but notwithstanding such payment and the previous payment by Pressley the defendants procured said suits to be prosecuted to judgment in the names of the original plaintiffs therein respectively, as appears in the defendant's answer, and afterwards procured the issuance of the executions under which the sheriff's sale was made, at which the defendant Rippetoe acquired the pretended title to the whole of lot 43 and part of lot 90 under which defendants seek to defend this suit; that said causes, and especially the case of Testard to the use of Lowery v. Pressley, had been and were suffered to remain on the docket of said court for many years without prosecution until the said Pressley, defendant therein, and those who would have been privies had the same been a *bona fide* proceeding and had the same been prosecuted with due diligence according to the course and practice of the court and of the law, had forgotten its existence, when judgment therein was taken, under which the sheriff's sale and the defendant Rippetoe's purchase was afterwards made.

"And the plaintiff further alleges that on or about the 16th of March, 1861, the aforesaid J. C. Jennings, in consideration of the sum of $797.50

to him in hand paid by the plaintiff herein, by his deed duly executed conveyed to the plaintiff sixty feet square in the southwest corner of lot 43, being the premises in controversy, and that the plaintiff thereupon entered into possession of the same and erected permanent improvements thereon, consisting of a two-story brick building of the cost and reasonable value of $10,000; that the defendant Rippetoe, in consideration of the sum of $700, by his deed executed May 16, 1861, conveyed to one T. J. Prindle the lot conveyed to him, the said Rippetoe, by the said Erwin, as above mentioned, and bound himself therein to warrant and defend the title thereto to the said Prindle, his heirs and assigns; that the said Perryman, who is named as a party defendant in the above recited suits, and against whom, in conjunction with Pressley, judgments were rendered as above recited, was at the date of his being made a party thereto and at the date of said judgments in possession of that part of lot 43 conveyed by said Rippetoe to said Prindle, claiming and holding title thereto by virtue of several conveyances to him the said Perryman and A. Pflughaupt from said Prindle and others claiming under him with warranty of title."

On March 28, 1888, plaintiff again amended by offering "to allow to the defendants such ratable proportion of the amount paid by them if any for the property purchased at the sheriff's sale referred to in the pleadings as the premises in controversy bear to the whole purchase or to such part thereof as may be held to be subject to a concurrent or subsequent lien with the premises in controversy, or to pay the amount thereof should the court hold that in equity and good conscience he ought so to do." The court sustained the exceptions of Onins, D. C. Giddings, and the heirs and legal representatives of J. D. Giddings, and dismissed plaintiff's case as to them, to which he excepted.

A written agreement between I. M. Onins, J. D. and D. C. Giddings, and A. H. Rippetoe, dated June 6, 1874, was introduced in evidence, showing that they were jointly and equally interested in lots 43 and 90, and that Rippetoe held the legal title in trust for said parties. It further showed that some of the land had been sold by Rippetoe and that the proceeds of such sales were equally divided between said parties, and that said parties were bound to share equally costs and damages growing out of litigation with respect to said lots.

The court submitted to the jury in the form of special issues the questions:

1.   "Did William B. Pressley in 1861 and before the rendition of the judgment in the case of Testard for the use of Lowery v. Pressley and Perryman pay off to J. D. Giddings, the attorney of record, the debt upon which said suit was founded?"

2.   "If he did pay off the debt as charged, did the defendant Rippetoe have notice of that fact when he bought the lot at the sheriff's sale?"

3. "If the jury answers the first question in the negative you need go no further, but return a verdict for the defendant."

The jury responded negatively to the first question.

The court further charged the jury that if they believed the Testard-Lowery debt was paid off to J. D. Giddings by Pressley as charged to ascertain from the evidence whether others were interested with Rippetoe in the purchase at the sheriff's sale, and if they found there were and that such parties had notice of such payment at and before such sale, then plaintiff was entitled to recover the shares owned by such parties.

The jury was instructed that if the evidence showed that the Harris suit was instituted after Dwyer had purchased and caused his deed to be recorded the defendant Rippetoe acquired no title against plaintiff under that judgment. Judgment was rendered for defendants, from which the plaintiff prosecutes this appeal.

His second assignment of error is that the court erred in admitting the testimony of D. C. Giddings and R. D. Harris. Pressley testified that he paid the Testard-Lowery judgment to J. D. Giddings, for which Giddings gave him a receipt; that neither I. M. Onins nor D. C. Giddings, who were the partners of J. D. Giddings, were present at the time of the payment; that the payment was made in February, 1861, while the case was pending by writ of error in the Supreme Court; that he had lost the receipt; that Erwin, Jennings, and Khrone were present when the payment was made; that of those present all were dead except himself and Khrone. Khrone testified that he was 77 years old, and that he never heard any conversation between Pressley and J. D. Giddings about the judgment, and that he did not remember ever being in Giddings & Onins's office with W. B. Pressley.

The evidence objected to is stated as follows in appellant's brief: "D. C. Giddings testified that he had been unable to find any entry on the books of Giddings & Onins relating to the alleged payment; that witness and Onins made the collections of the firm, kept the books, and generally conducted the work of the office; that they two were constantly in the office, and there was no time in the year 1861 when both were absent at the same time; that J. D. Giddings, who had other engagements, was absent a great deal and transacted but little of the business of the firm; that he rarely made a collection, and when he did he was always careful to wrap up the money to itself and report it to witness or to Onins, who would make the proper entries in the books; that J. D. Giddings had drawn up an amended petition in the Testard-Lowery case after its reversal in the Supreme Court; that he had consulted with witness about the case; that he had conducted the first trial of the present suit, and that he had never mentioned the alleged payment to witness," etc.

R. D. Harris testified that prior to the institution of his suit he had called on the plaintiff and other purchasers under Pressley of portions of

the premises subject to the vendor's lien, to unite in paying off the note held by him, and that they had failed to act on his suggestion; that he had also written to Pressley about it, who had written in reply that the note was secured by a vendor's lien on a lot, and to go ahead and make his money.

We think that under all the circumstances of this case the evidence of these witnesses was properly admitted.

The only grounds of objection to it assigned in appellant's bill of exceptions are that the evidence "was incompetent and irrelevant, was hearsay, and *res inter alias acta*, and tended to confuse the jury and obscure the testimony."

The third assignment is that there "was error in excluding portions of W. B. Pressley's testimony and the several deeds offered in connection therewith, as shown by plaintiff's first bill of exceptions."

The record shows that this witness was present at the trial and testified at great length before the jury. The bill of exceptions referred to recites that "plaintiff sought to show by the witness Pressley the same facts previously elicited from him by deposition as hereinafter shown." The defendants objected to said testimony on the ground of irrelevancy. The objection was sustained. The excluded testimony (it is stated in the bill of exceptions) "is shown by the following interrogatories and answers found in the deposition of said witness taken February 11, 1882, which for convenience may by consent be copied."

Then follows the interrogatories and answers covering eight type-written pages, which we have carefully examined without being able to find anything properly admissible and material not included in the oral evidence of the witness admitted by the court.

This bill of exceptions also recites "that the court on like objection excluded the several deeds referred to in said interrogatories and answers which would have supported the recitals therein." Exactly what deeds these were, and how they were offered, and how proved, we are not able to satisfactorily ascertain from this bill of exceptions.

If after the witness had testified orally it was proposed to repeat, add to, and confirm his testimony by reading an old deposition of the same witness found among the papers, and offer all deeds referred to in the deposition instead of offering them separately with proper proof of their execution and explanations of their relevancy, as seems to have been the case, we think the offer was too general and that the evidence was properly excluded.

Plaintiff offered to read the evidence of the defendant A. H. Rippetoe at a former trial of this cause from a statement of facts found among the papers signed by the attorneys of both parties and approved by the presiding judge. It was made to appear that the witness was dead. The plaintiff offered to establish the evidence by his attorneys and those of

the defendant and by the presiding judge at the trial, none of whom could recollect it. The court excluded the statement of facts. We think the ruling was correct. The statement of facts was in no sense the act of the witness. It was made only with reference to the issues that would be presented in the appellate court, and would not necessarily contain all of the evidence given by the witness on any point. While it may be used as a means of refreshing the memory of a witness in a proper case, we see no reason for departing from the rule that has always prevailed in the courts of this State limiting the reproduction of a deceased witness' testimony to the evidence of a witness who heard it. In Wharton on Evidence it is said:

"What a witness since dead has sworn upon a trial between the same parties may be given in evidence either from the judge's notes or from notes that have been taken by any other person who will swear to their accuracy, or the former evidence may be proved by any person who will swear from his memory to its having been given." Sec. 177.

"The mere notes of the judge, unsworn to or unproved, can not be received. If the judge be alive he must be called as a witness, the notes being then receivable to refresh his memory." Sec. 179.

The court charged the jury that if plaintiff purchased during the pendency of the foreclosure suit he was bound by the judgment rendered therein as fully as if he had been a party to the suit. Plaintiff requested charges announcing that the doctrine of *lis pendens*, applied to a purchaser without actual knowledge of the pendency of the suit, or who having notice of the suit believes and has reasonable grounds to believe that the debt has been paid, is a harsh one, and will not in such a case, and where there has been any unusual or unreasonable delay in the prosecution of the suit, be enforced; announcing that there had been great apparent negligence and delay in the prosecution of Testard-Lowery foreclosure suit, and instructing the jury that defendants having offered no sufficient explanation of such apparent negligence and delay they could not avail themselves of the judgment of foreclosure to defeat plaintiff's recovery; that it is ordinarily the duty of the plaintiff in a case which has been reversed in the Supreme Court to file the mandate in the District Court to the first term of the court; that in this case the mandate was not filed to the first or second but to the third term, and that it was for the jury to say whether or not the evidence has sufficiently explained this delay. Without copying more from the eight charges requested by plaintiff on this subject and refused by the court, we think the charge of the court was proper and those asked by plaintiff inadmissible.

Appellant's sixth assignment of error presents this question: In executing the orders of sale issued upon the judgments foreclosing the vendor's lien the sheriff's deed in terms conveyed to Rippetoe, the purchaser,

such estate as Pressley and Perryman had on the 17th and 24th days of
October, 1870.

It appeared from the evidence that Perryman never had any interest
in the lot now in controversy, and that Pressley had parted with all of
his interest long before said date.

Plaintiff requested the court to charge the jury to render a verdict in
his favor because neither Pressley or Perryman owned any interest in the
land at the time named. This charge was properly refused. The pur-
chaser at the sheriff's sale acquired all the title conveyed by Browning to-
Pressley.

The plaintiff requested the court to charge the jury as follows, which
the court refused:

"20. The several portions of lot 43 and part of lot 90 sold by Pressley
to various parties would be liable in the order of such sales for the pay-
ment of the vendor's lien thereon; and if two or more fractional parts of
a lot were sold to different parties at the same time and in the course of
the same transaction, then they would be liable concurrently for the pay-
ment of the lien, and such concurrent purchasers would be charged with
a trust towards each other in any dealing with the common encumbrance,
and their several vendees subsequently would also be charged with a like
trust towards each other so far as dealing with the common encumbrance
is concerned; and

"21. A person charged with a trust as above defined has a right to
buy in the common encumbrance and to enforce a pro rata contribution
from the others whose property is jointly liable with him therefor; but
the rules of law will not permit him to purchase up such encumbrance
and then to prosecute it to judgment and execution without notice to the
others whose property is bound for it, and to acquire a title to their prop-
erty under a sale made by virtue of such judgment and execution."

This question was decided on a former appeal of this case. 49 Texas,
505. It is there suggested that the equities existing between the parties
could not be asserted in this case.

Referring to the case of Roberts v. Thorne, 25 Texas, 788, it was held
that "tenants in common acquiring their interests under different in-
struments at different times, and there being no agreement between them
respecting the title, are under no such relation to each other as to pre-
vent one of them from purchasing an outstanding title or encumbrance."
It is there suggested that such trust relation may arise between joint
tenants, as copartners or tenants in common, holding under the same
instrument, if the right is asserted within a reasonable time.

Here none of these relations existed. Even if such right had existed,
it was not asserted in a proper manner or reasonable time.

As said by Justice Gould, we still are unable to see how the relation of
Rippetoe either to the property or to the plaintiff disqualified him from

purchasing otherwise than in trust for Dwyer and others, and in the absence of authority supporting the doctrine laid down in the charge we hold it erroneous.

The appellant's eighth assignment of error is as follows:

"8. The plaintiff's evidence tending to show that prior to the rendition of the judgments in the cases of Testard to the use of Lowery v. Pressley and Perryman and Harris v. Pressley and Perryman the vendor's lien notes therein sued on had been paid off by Pflughaupt and Perryman, whereby said vendor's lien was discharged as to purchasers under said judgments having notice of such payment, and the evidence tending to charge the defendant Rippetoe and his associates with notice of said payment at and prior to his purchase at the sheriff's sale, the court erred in confining the charge to an assumed purchase of the notes by Pflughaupt and their transfer to him, as was done in the special charges given at defendant's request, and in refusing the twelfth, fifteenth, twenty-second, twenty-third, twenty-fourth, and twenty-fifth special charges requested by the plaintiff, presenting to the jury his theory of the evidence."

The evidence relating to this issue as found in the record before us is as follows:

Giddings testifies that after the suits were filed Perryman and Pflughaupt and their attorneys had several interviews with him about a settlement of the notes, how much the several parties ought to pay, etc. Finally Perryman and Pflughaupt proposed to pay the notes with the understanding that if not reimbursed by contributions from other owners of property subject to the lien the suits should be prosecuted to judgment for their benefit in the names of the plaintiffs as they stood on the docket; and in accordance with this understanding Perryman and Pflughaupt paid witness the money and he made the transfer he thinks under Onins' direction.

Onins testifies that his firm bought the claims and afterwards before the judgments were rendered sold a half interest in them to Rippetoe; that the claims were transferred to Pflughaupt by mistake; that the claims were to go into judgment for the use of his firm and that the property was to be purchased for the joint account of Rippetoe and his firm; that they were to buy in the property unless it brought the money; that they were interested equally with Rippetoe in the purchase afterwards made by him, and that such was the understanding from the time of their transfer.

Pflughaupt testifies: "Perryman and I were joint owners of the 30x90 out of lot 43, now called the barrel-house. We held under a warranty deed from W. G. Wilkins, who held under a warranty from Dr. A. H. Rippetoe. When Perryman was made a party to the two suits of Testard-Lowery v. Pressley and Perryman, and R. D. Harris, executor of

Key, v. Pressley and Perryman, we employed I. M. Onins to defend the suit for us—that is, to see that we were protected on our warranty. Rippetoe was solvent and we knew we could hold him for whatever we had to pay to secure our title. There was only about $400 then due on the two notes. We did not regard Wilkins as solvent, but looked to Rippetoe. Onins said he would do all he could for us, but it would be best for us to compromise. The case went along for some time, and we got tired of waiting, as nothing was being done, and at last Perryman and I raised the money and paid off the notes to Giddings & Giddings, who were the attorneys for the plaintiffs in the two suits. It was our money that paid the debts. I think the money was paid to Mr. A. Jeffries, clerk for Giddings & Giddings, but in their presence. Onins was present also. He was our attorney and had charge of the business for us. After the debt was paid I left and Onins remained behind. I did not know of any transfer of the notes to us or to Onins. We paid the debts to release our property from the liens, and expected Onins to recover back the money for us out of our warrantors. We looked only to Rippetoe, whom we knew to be solvent. We did not know he had only sued Wilkins."

Cross-examined: "Only Perryman's name was in the suits, but we were both interested in the property. If Onins had a partner at that time I did not know it. Perryman and I talked only to him. We never heard of Swearingen. When we paid the money Onins said he would get it back for us out of 'those fellows.' We did not get it back until after the suits were decided and after the sheriff's sale. We paid the notes to save our property, but Onins was our attorney, and we were acting on his advice and we did what he told us. We paid the debts off to relieve our property of the liens, and looked to Rippetoe to pay us back our money. When we left Giddings's office we left Onins in there. He stayed behind to fix it up so we could get our money back. He was to act for us in getting it back. On the day of the sheriff's sale Rippetoe came down and borrowed $47 of us to pay costs of suit. About two or three weeks after the sale we got our money back. It was paid to us by Rippetoe and Onins."

Re-examined by plaintiff. "We did not authorize Onins to take a transfer of the notes to himself, or to him and Swearingen, or to transfer any interest in them to Rippetoe. It was our money that paid the notes, and all he was authorized to do for us was to get it back from Rippetoe for us. We never knew how he was managing the case."

The plaintiff requested the following charges, which were refused:

"12. If the evidence shows that said debt was paid by Perryman and Pflughaupt before the judgment was rendered, and that Rippetoe had notice of such payment at and before the time of his said purchase at the sheriff's sale, then he acquired no title to the premises in controversy and you will find for the plaintiff.

"16.   If you believe from the evidence that the Testard-Lowery debt
was  paid before the rendition of  the judgment of October 17, 1870, and
that Onins was under the rules elsewhere stated  charged  with  notice of
such payment, and if you further believe from the  evidence  that Onins
and Rippetoe, either alone or in conjunction with others, combined to-
gether to procure the sale of the property under  the forms of law with
the purpose of buying it in for their joint account at a sacrifice, and that
Rippetoe's purchase was made in pursuance of such conspiracy, then you
are charged that the purchase so made  by  Rippetoe would  be void, al-
though notice of  the payment may not have been brought home to him.

"22.    An attorney at law charged with  the collection of a  debt has
no authority to transfer  the debt, and  you are charged that the transfer
to A. Pflughaupt endorsed on the notes by J. D. and  D.  C. Giddings
was nugatory and void, and if Pflughaupt  paid the debt with the intent
to discharge the lien from his own property its effect was to discharge the
lien upon all the property including that involved in this suit, and the
lien would not be revived by the attempted transfer whether made by the
direction of  Pflughaupt or not.

"23.   If the jury believe from the evidence that Pflughaupt paid the
debt the lien would be discharged and  the debt would not  be re-estab-
lished by any subsequent transfer  of the notes by whomsoever  or to
whomsoever made.   And if you find from the evidence that I. M. Onins,
J. D. Giddings, and D. C. Giddings, all or either of  them, have any in-
terest in the property and had  notice of  the payment of the debt by
Pflughaupt (if any), or  had knowledge of such facts and circumstances
as would have put a reasonably prudent man on inquiry, then the plaint-
iff would be entitled to recover  the interest of each (if any) in said
property; and if you believe from the evidence that Rippetoe had notice
of  the payment (if any) of the debt by Pflughaupt or had knowledge of
such facts and circumstances as would have put a reasonably prudent man
on inquiry, then the plaintiff is entitled to recover the whole of said
property.

"24.   If Pflughaupt paid the debt the lien would be discharged and
would  not  be re-established by any subsequent transfer of the notes by
whomsoever or to whomsoever made."

These charges were refused.   In the charge in chief the court wholly
ignored the payment made Pflughaupt and submitted only the issue as
to the payment made by Pressley, and in the fourth charge given at de-
fendants' request charged in reference to said issue as follows:

"4.   Pflughaupt had the right to take up the liens on the property in
order to protect himself in the part owned by him and to have the same
prosecuted to judgment for his benefit, and A. H. Rippetoe and Swear-
ingen & Onins could also become the owners of said liens and claims, and
it is no defense to Rippetoe's title under the foreclosure and sheriff's sale

that the debts had been transferred by the plaintiff in the foreclosure suits."

The issue here raised suggests a distinction between the payment and consequent satisfaction and discharge of the lien debts and their transfer or assignment.

The court treated the transaction as an assignment and not a discharge, and unless there was a conflict in the evidence upon this point the charge given at the request of defendant was not only proper but was the only charge required on the subject.

The plaintiff in his supplemental petition distinctly alleges that this was a payment and discharge of the debt. The charges refused present that theory of the case. If the difference is material, and there was evidence tending to establish his theory, it was his right to have a charge submitting it to the jury.

This court held on the last appeal of this case that the prosecution of the lien debt to judgment after its payment by Pressley would have been fraudulent as to a purchaser from Pressley of the encumbered property. Pressley owed to the plaintiff the duty of paying the debt for which the property sold him was bound. But the purchasers of other portions of the property bound for the same debt owed plaintiff no such duty.

Other owners of parts of the encumbered land were under no greater obligations to pay the debt than plaintiff was. If none of them discharged it the result would be that the suit would be prosecuted and the land would be sold to satisfy the judgment. Up to the date of the sale plaintiff would in that case have had the right to pay off and discharge the judgment, or failing to do that he would have had the right to purchase all of the land at the sheriff's sale. The action of Perryman and Pflughaupt, whether treated as a payment or purchase of the debt, did not change his position in any of these particulars or deprive him of any right. If plaintiff was deprived of no right, if his position was changed in no respect, we are unable to see how he can complain that the transactions were fraudulent.

Plaintiff or any other purchaser of the land from Pressley had the right to pay or purchase the debt as they chose and afterward to stand in the shoes of the original creditor and enforce it, treating the payment as an assignment of the debt, or if they preferred to do so treating it as a discharge, and demand contribution from the owners of other parts of the encumbered property. This right existing, we do not think the form of the transaction or the precise words used in consummating it ought to be given a controlling effect.

The fact that a judgment was rendered for the debt stands as conclusive evidence in this proceeding against all parties to the suit in which it was rendered that the debt on which it was rendered had not been then paid.

Grant that if the debt had in fact been paid when the judgment was rendered it would be open to collateral attack by all strangers to that suit, and that notwithstanding plaintiff's position as a purchaser *pendente lite* he may be treated as a stranger for the purpose of attacking the judgment collaterally, still he would have to show that he was defrauded. He would have to show that the prosecution of the debt to judgment for the use of Perryman and Pflughaupt placed him in some different and worse situation than he would have been in if it had not been paid at all. This he has not done. If others situated like he was and bound to do no more than he was had done just what he did his situation would have been exactly what it now is.

For these reasons we do not deem it material to weigh with the greatest precision the language of the witnesses to determine whether the transaction by Perryman and Pflughaupt was a purchase or a payment of the debt; but if it was material we would find it quite difficult to determine that the evidence taken as a whole or that the testimony of any one witness considered as a whole tends to establish a payment as contradistinguished from a purchase of the debt.

Onins testifies unequivocally that it was a purchase. Giddings uses the word "pay," but evidently in the sense of "purchase," as he says they proposed "to pay the notes with the understanding that if not reimbursed by contributions from the owners of property subject to the lien the suits should be prosecuted to judgment for their benefit in the names of the plaintiffs as they stood on the docket."

Pflughaupt says the notes were paid off in a way to indicate that he intends to be understood they were discharged, but he at the same time says that Onins was present and had charge of the transaction. It was Onins that caused the transaction, at the time and not afterwards, to take the form of a purchase and not a payment. The witness says they expected Onins to get back the money out of their warrantors; that they were acting by his advice and did what he told them; and that when they paid the money they left him behind to fix it up so they could get their money back.

We think this evidence authorized Onins to do what he in fact did. He made the transaction a purchase and not a discharge of the debts. Treating it as a purchase he did recover the money paid by the witness and released his land from the encumbrance. The witness having made Onins his agent, received the benefit of his transactions, and thereby ratified them, he can not now be permitted as a witness or otherwise to disavow them.

We think the court committed error in sustaining the exceptions of defendants Giddings and Onins to the plaintiff's petition, and for that error the case would have to be reversed if it were not that they are so connected with the defendant Rippetoe that the case against them has

been fully developed on the trial.    We are satisfied that plaintiff has no better right to recover of them than he has to recover of Rippetoe, and think that the error must be treated as immaterial.

Whatever may have been the equities of the plaintiff if they had been prosecuted at another time and in other forms, we are constrained to say that we think he had no right to recover in this suit and that the judgment ought to be affirmed.

*Affirmed.*

Opinion January 25, 1889.