## BUFORD et al. v. COLE et al.
## No. 5534.

Court of Civil Appeals of Texas. Texarkana.

Dec. 14, 1939.

Rehearing Denied Dec. 21, 1939.

T. H. Stone, of Houston, Gordon Huffmaster, of Hallsville, and Eugene H. Murphy, of Longview, for plaintiffs in error.

Williams, Lee, Sears & Kennerly, of Houston, W. H. Francis and Roy C. Ledbetter, both of Dallas, John E. Green, Jr., Joe S. Brown, and Robert F. Carter, all of Houston, E. R. Hastings, of Tulsa, Okl., Lacy, Price & Williams, of Longview, Blalock, Blalock, Lohman & Blalock, of Houston, Read, Lowrance & Bates, of Dallas, Bramlette, Levy & Dotson and Richard B. Levy, all of Longview, and H. S. Garrett, of Fort Worth, for defendants in error.

WILLIAMS, Justice.

Appellants, T. E. Buford and others, filed this suit July 26, 1935, alleging in statutory form a trespass to try title action, specially pleading that they jointly claimed and owned as tenants in common an undivided 1/10 interest in Judson M. Meador H. R. Survey in Gregg County. Defendants, Cole and wife, sued as fee owners, answered with general demurrer, denial, not guilty, and specially pleaded in defense title under the 3, 5, 10 and 25 year (Articles 5507, 5509, 5510, 5519, Vernon's Ann.Civ.St.) statutes of limitation. Defendants oil companies, not necessary to name, sued as leaseholders for appropriation of oil produced, urged same defenses in addition to others, including improvements made in good faith. Each defendant also pleaded a cross action. Upon affirmative findings by the jury that defendants had actual, peaceable and adverse possession of the survey of land under the 5 and 10 year statutes of limitation (no other issue being submitted), the court entered judgment that plaintiffs take nothing by their suit.

The survey was patented in 1863 to the heirs of W. M. Simpson, as assignees of a land certificate issued to Judson M. Meador. In a suit originated by some of the Simpson heirs against other heirs and parties, one Gaines Turner intervened, and in a judgment rendered in 1904 Turner recovered

title and possession of the survey. Ara Buford, an heir, was not a party to this judgment. Plaintiffs claim as heirs of Ara. Under a deed containing a general warranty clause, dated in 1907, recorded in 1911, Turner purported to convey the survey in its entirety, describing it by metes and bounds, to Mrs. Nannie Walker, a stranger to the title. Under a deed dated March 14, 1918, filed for record May 4, 1921, containing a general warranty clause, Mrs. Nannie Walker and husband for a recited consideration of $25,000 conveyed to defendant Cole a body of land, composed of various surveys and tracts, as reflected by the following map:

boundary line of the Brooks and Bradshaw Surveys to Bradshaw's S. W. corner; Thence East with South boundary line of Bradshaw, Duncan and Johnson Surveys to Sabine River; Thence with meanderings of Sabine River upstream to place of beginning."

The tract is further described: "And containing 2092.6 acres of land, more or less, being all the E. L. Walker Survey, the A. Park Survey, the Andrew Park Survey, the Samuel Brooks Survey, the Judson M. Meador Survey, the J. W. Bradshaw Survey, the Thomas Johnson Survey, and all the J. A. Duncan Survey, except the Ben Greer tract of 29½ acres,

The deed does not describe each tract separately. Instead, the land conveyed is described as an entity. Omitting the distance calls, witness trees, and meanders of Sabine River as contained in the deed, the boundary of the land so conveyed is as follows: "Beginning at the Sabine River at the S. E. corner of the John Tate Sur; Thence South to the North boundary line of Samuel Brooks Survey; Thence West with Brooks' North boundary line to its N. W. corner; Thence South with West

and all the interest of E. L. Walker and Mrs. Nannie Walker, or either of them, in the G. F. Penn Survey."

Between 250 and 300 varas of the North line of the Meador Survey fronted on Sabine River. With this exception, the Meador Survey was surrounded by land owned by Cole.

The Walkers in 1912 enclosed the above-described body of land, together with other lands situated to the Northwest then owned by them, by erecting fences to connect with

fences of adjacent landowners, some partnership, and through use of Sabine River as a natural fence barrier. Walkers and their lessees used the lands so enclosed on which to keep and pasture stock from 1912 until their sale to Cole in 1918. Cole began in the spring of 1919 to segregate the land he purchased from the original body by erecting a division fence beginning at the Northwest corner of the Brooks survey to point "A" on the map, and thence on North to Sabine River. When he completed this fence in the spring of 1922, his body of land was enclosed with fences and Sabine River, and so remained until drilling operations for oil began in 1931.

At least 1500 acres purchased by Cole was overflow land and valuable only for pasturage purposes and for its timber. From 250 to 300 acres of the Meador Survey were subject to overflow, not over 40 acres above highwater. In the language of a witness, "There might have been a part off the North end, some patches there, suitable for farming." From 1903 until 1934, a period of 32 years, taxes on the Meador Survey were rendered and paid each year, before becoming delinquent, by Cole from 1918 to 1934; by Walker from 1908 to 1917; and by Turner from 1903 to 1907. Plaintiffs and those under whom they claim, have never rendered for or paid taxes on any part of the Meador Survey.

Defendant Cole, a dairyman and stockman by trade, and his family, with two carloads of cattle, moved to this land in the summer of 1918. He moved into an old house on the Northeast corner of the Park Survey and there built a dipping-vat for his cattle. Later that year he erected a saw mill, cut lumber and built a house to live in; and still later he built tenant houses, a larger home, and cleared some 200 acres and enclosed same with fences. This improvement was all on the Brooks Survey. He and his tenants continued to reside on and cultivate the land continuously from 1918 to 1931. During this same period Cole used all the body of land except that in cultivation, to pasture goats, hogs, cattle and other live stock. In 1924 or 1925, Cole divided his body of land into two pastures by building a fence running East and West, indicated .by the line "AB" on the map. This fence ran across the Meador and Park Surveys. This fence was kept up by Cole until 1931. The fence was built out of tie siding, all lumber, making a pretty solid wall, goat-proof, and about five feet high.

From 1918 until 1931, Cole and those to whom he sold timber operated a saw mill and sawed timber into lumber and ties off the body of land, including the Meador Survey. This operation continued at intervals during this period of time. None of the mills or any houses were erected on the Meador Survey. When Cole's leaseholders, the oil companies, began their operations to drill for oil Cole and his family moved off. Since that time his leaseholders have continuously remained on the Meador Survey in their development of the survey into oil-producing property. Plaintiffs and those under whom they claim have never been in actual possession of any part of this survey.

In a very able brief plaintiffs contend that the possession of the Brooks Survey by Cole did not constructively extend to and include the Meador Survey, citing and relying upon Simonds v. Stanolind Oil & Gas Co., Tex.Sup., 114 S.W.2d 226, and the decisions therein discussed by the Commission of Appeals. We pretermit a discussion of the holding in the Simonds case as applied to some of the facts in this record, for the judgment here rendered is founded upon the affirmative answers of the jury upon the question of actual peaceable and adverse possession of the Meador Survey.

Plaintiffs further assert that "in the entire record, from beginning to end, there is no evidence whatsoever that Cole ever made any actual use of any part of the Meador Survey for any definite period of time whatsoever, much less that he continued any such use for the full uninterrupted period of the statutes (Articles 5509, 5510) for the completion of a title by limitation." This record does not support such a position. From 1924 or 1925 until 1931, a period of six or seven years, a five-foot blind fence, erected by Cole remained upon and split the Meador Survey. In 1931, the oil companies, leaseholders under Cole, entered upon the survey and built derricks and outhouses thereon in the drilling for and production of oil. They have continuously so remained. The board fence and the acts of the oil operators were continuous, visible and hostile. There was evidence upon the ground that timber had been cut and was being cut at intervals. During this time and for several years prior thereto, Cole used the survey and adjacent lands to pasture his goats, hogs and other livestock. Being mostly overflow, the land was not suitable for cultivation. Taxes for five consecutive years

before delinquency had been paid. Cole at all times claimed title to the whole survey. The deed to Cole wherein Walker purported to convey the Meador Survey in its entirety with general warranty of title had been recorded in 1921. Such deed with its recordation, together with Cole's entry thereunder, payment of taxes, and possession by him, amounted to a disseisin and constituted constructive notice to plaintiffs of a repudiation of the alleged relationship of tenants in common. Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352. The facts under this record, at the least, presented a question of fact on the issues of the 5 and 10 year limitation titles. Brown v. Fisher, Tex.Civ.App., 193 S.W. 357, 360; 2 Tex. Jur. 323, Sec. 184.

Special Issue No. 1 submitted by the court reads: "Do you find from a preponderance of the evidence that M. T. Cole and wife and other co-defendants and those under whom all the defendants hold and claim, have held peaceable and adverse possession of the land described in plaintiffs' second amended original petition (the land described being all the Meador Survey by metes and bounds), cultivating, using or enjoying the same and paying taxes thereon and claiming under a deed or deeds duly registered for any period of 5 consecutive years before July 26, 1935?"

Similar inquiry was made regarding the 10 year statute of limitation. In connection with these issues the court within the terms of Articles 5514 and 5515 defined "peaceable possession" to mean "such possession as is continuous and not interrupted by adverse suit to recover the estate"; by "adverse possession" to mean "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of the real owner. The use and enjoyment of the land necessary to make its possession adverse under our limitation statutes is only that to which the land is adaptable and capable of being used"; and the court further instructed the jury that the word "hostile" means a holding out with intent to claim it as his own to the exclusion of all others. No exceptions were taken to the charge. Each of the special charges requested by plaintiffs which the court refused to submit to the jury gave particular cogency or weight to particular factual elements and would have constituted a general charge.

The judgment is affirmed.