**BRADSHAW et al. v. HOLMES et al.**

No. 6193.

Court of Civil Appeals of Texas. Amarillo.

Dec. 3, 1951.

Rehearing Denied Jan. 7, 1952.

---

Reeder & Reeder, Amarillo, for appellants.

James W. Witherspoon and John D. Aikin, Hereford, for appellee.

PITTS, Chief Justice.

Appellants, Claire Bradshaw and husband Max Bradshaw, of the State of Ohio, filed suit on September 12, 1950, against appellee W. F. Holmes of the State of Illinois and one E. W. Solomon of Texas, seeking to partition a half section of land situated in Deaf Smith County, Texas. Appellants alleged that they owned an undivided one-half interest in the said land and appellee and Solomon owned the other undivided one-half interest in the said land. Solomon answered disclaiming any interest in the fee simple title to any of the said land but asserted a claim to some improvements placed thereon in good faith as a tenant and with the approval of appellee, for the value of which he sought judgment against appellants should they prevail in this suit. Appellee Holmes answered with a general denial and pleas of three, five and ten year statutes of limitations and by way of a cross-action in the nature of trespass to try title he sought judgment for title and possession of the land in question by reason of a registered deed and the operation of the three, five and ten year statutes of limitations.

The case was tried to the court without a jury and judgment was rendered denying appellants any recovery and awarding fee simple title to and possession of all of the said land to appellee Holmes from which judgment appellants have perfected their appeal. No findings were requested and therefore no findings were made and filed by the trial court. If the pleadings and evidence support the trial court's judgment on any theory the same must be sustained. It must be presumed that the trial court's findings supported its judgment. In considering the sufficiency of the evidence in support of the presumed findings of the trial court, the reviewing court must construe the evidence in the light most favorable to the judgment and disregard all evidence to the contrary, indulging every legitimate conclusion which tends to uphold the judgment. Strickland v. Humble Oil & Refining Co., Tex. Civ.App., 181 S.W.2d 901, and Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683, and other authorities there cited.

The controlling issue to be here determined is whether or not the evidence, under all the facts and circumstances, will support appellee's claim of ten year statute of limitations. Article 5510, Vernon's Annotated Civil Statutes, provides in part that: "Any person who has the right of action for the recovery of lands tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward."

Appellants seek to avoid the application of the foregoing statute upon the grounds that appellant Max Bradshaw and appellee W. F. Holmes were cotenants of the land in question and appellant Max Bradshaw was never given proper notice of any adverse claim of possession made by appellee Holmes of the said land.

The record reveals that Charles E. Bradshaw and Mae Bradshaw were married in the State of Illinois on August 21, 1900, and that appellant Max Bradshaw, born to their marriage on June 27, 1903, was their only child; that the Brad-

shaws resided continuously in the State of Illinois until sometime after the death of Charles E. Bradshaw on November 28, 1924; that during his marriage to Mae Bradshaw, Charles E. Bradshaw purchased and owned lands situated in the States of Illinois, Iowa, Minnesota and Texas, the Texas land being that here involved, consisting of 320 acres, acquired by Charles E. Bradshaw through two separate deeds executed on January 8, 1909. The face of the deeds showed the execution of four vendor lien notes by grantee in the total sum of $2125.92 outstanding against the said land as a part of the purchase price. The record does not reveal how or when such payments were made and the deeds do not show the land to be the separate property of Charles E. Bradshaw. The question of whether the said land was community property or the separate property of Charles E. Bradshaw is a disputed issue here but we do not think such is a material issue in this action. The record discloses that Max Bradshaw had an interest in the land here involved as a legatee of his father's will. The extent of his interest is not material in view of the disposition being made of the case. Charles E. Bradshaw died testate, devising one-half of any land he owned, which must have included at least an interest in the land here involved, to his wife Mae Bradshaw, and the other half to his son Max Bradshaw. Mae Bradshaw was therein named as independent executrix. The will of Charles E. Bradshaw was admitted to probate on December 19, 1924, Mae Bradshaw qualified as executrix and she and her son went immediately into joint possession and held control of the land in question for some time thereafter. The said will nowhere mentions or describes the land here involved; the record does not reflect an inventory and appraisement of the estate of Charles E. Bradshaw at the time of his death; neither does the record reveal whether or not any of the probate proceedings had in connection with the will were ever recorded in Deaf Smith County, Texas, where the land here in-

volved is situated. However, appellee testified that he knew before he filed the foreclosure suit hereinafter mentioned that Charles E. Bradshaw was dead, that he left a will which had been admitted to probate in the State of Illinois and that the provisions of the will affected the land here involved. Max Bradshaw testified that he and his mother had lived together since the year 1931 and that he had assisted his mother in taking care of her business since his father's death. Subsequent to the death of Charles E. Bradshaw, appellee Holmes sued Mae Bradshaw in the State of Illinois for the collection of a promissory note executed by her on January 14, 1933, to another party and thereafter purchased by appellee. He obtained judgment against her on February 9, 1938, in a proper court for his debt in the sum of $4613.43, upon which judgment he immediately thereafter brought suit against Mae Bradshaw in the District Court of Deaf Smith County, obtaining jurisdiction in rem by attaching the half section of land here involved as the alleged property of Mae Bradshaw. In the latter suit appellee obtained judgment against Mae Bradshaw for the amount sued for and a foreclosure of the attachment lien. Pursuant to an order of sale the Sheriff of Deaf Smith County on November 1, 1938, deeded to appellee all of the right, title and interest of Mae Bradshaw in and to the half section of land here involved. Immediately thereafter appellee went into possession of the said half section of land, kept it under fence, cultivating, using and enjoying the same either personally or through tenants without being disturbed by anyone until this suit was filed on September 12, 1950. On February 14, 1949, Max Bradshaw, for a consideration of ten dollars and other valuable considerations, sold and deeded all of the said one-half section of land here involved to his wife Claire Bradshaw, who, more than a year and a half thereafter, joined by her husband, filed this suit for a partition of the land. It must be admitted that Claire Bradshaw's title was no better than that of her hus-

band and she took the land subject to appellee's claims thereto.

The evidence reveals that appellee foreclosed upon all the half section of land here involved as was shown in the petition, the writ of attachment, the lis pendens notice, the trial court's judgment, the order of sale, the sheriff's return and the sheriff's deed, which was placed of record in Deaf Smith County. The half section of land was all under fence when appellee bought it and took possession of it, since which time he has claimed and asserted title to all of it, kept it under fence, had improvements placed thereon, continuously using, enjoying and cultivating it. H. D. Culpepper had farmed the land in controversy during the years 1936, 1937 and most of 1938 prior to the foreclosure on November 1, 1938, as a tenant of and under the direction of appellant Max Bradshaw, through his agent, Mr. Blood. Upon arrangement with appellee, H. D. Culpepper continued to occupy and farm the said land as a tenant of appellee after the foreclosure in 1938 until 1946 and paid all rents during the latter period of time to appellee. E. W. Solomon succeeded H. D. Culpepper, with the approval of appellee, as appellee's tenant of the said land, and has since continuously occupied the said land, farming and grazing it and paying all rents to appellee. Appellee has consistently paid annually and before they became delinquent all taxes levied and assessed against all of the half section of land since 1938. On October 6, 1941, appellee paid delinquent taxes, together with penalty and interest, on all of the land for a period of seven years, from 1932 to 1938, both inclusive, which appellant Max Bradshaw and his mother had permitted to become delinquent. Appellant Max Bradshaw knew about the existence of the general government farm program, which came into existence under the Roosevelt administration in 1933, and was first known as "Triple A" but later was called "P. M.A." H. D. Culpepper as tenant of appellant Max Bradshaw enrolled to participate in the government farm program in 1936 or 1937 and sent the name of Max Bradshaw as landlord to the government authorities so he would share in the landlord's part of the program. The tenant and the landlord each signed the government papers for himself in connection with the government farm program. Culpepper continued in the said farm program after the foreclosure suit in 1938 as the tenant of appellee but had the name of the landlord in the government program changed to appellee W. F. Holmes. Appellant Max Bradshaw had a friend and neighbor in the State of Illinois whose name was Betz, whom Bradshaw had known all his life. Mr. Betz had owned land in Texas adjoining the half section here involved since 1909. Max Bradshaw had another such friend and neighbor in Illinois whose name was Gilmore and who owned land either adjoining the land here involved or the Betz tract of land. The record further reveals that appellee Holmes and appellant Max Bradshaw were not related, had never had any business transactions with each other and had never met each other until the date of the trial.

Based upon these material facts, appellee contends that appellant Max Bradshaw had both actual and constructive notice of appellee's adverse occupancy of the entire half section of land here involved and that he and appellant Max Bradshaw were never cotenants of the said half section of land. But, whether they were cotenants or not, appellee further contends that the manner in which he acquired title and possession of the said land amounted to a disseisin or ouster of appellant Max Bradshaw and thus gave him immediate notice of the fact that appellee's claim and possession of the said land was hostile and adverse to any interest or claim the said appellant may have then had in the said land.

Appellants concede in their brief that the foreclosure proceedings and judgment in the Deaf Smith County suit of W. F. Holmes against Mae Bradshaw vested in appellee Holmes all the interest of Mae Bradshaw in the half section of land, and they further concede that appellee

took possession of the land here involved soon after the date the sheriff's deed was executed and remained in possession thereof through tenants, paying the taxes thereon and collecting the rents therefrom. But they contend that the said suit and judgment did not disturb Max Bradshaw's interest in the said land since he was not made a party to the said suit. They further contend that appellee Holmes and appellant Max Bradshaw were cotenants after appellee acquired an interest in the said land and that appellant Max Bradshaw was never given actual notice of any adverse claim of possession appellee was making to the said land. Such contentions are challenged by appellee who charges that appellant Max Bradshaw, who was looking after his mother's business, had read a part of the foreclosure proceedings in the 1938 suit against his mother and that he knew appellee had foreclosed upon all of the one-half section of land to satisfy his debt against her and that the said appellant knew that appellee had taken possession of all of the said land and was claiming all of it.

As far back as 1849 the Supreme Court held in the case of Webber v. Cochrane, 4 Tex. 31, that the setting up of a statute of limitations as a defense is no longer looked upon as odious and discreditable. It has likewise since been held that the statutes of limitations should be liberally construed in favor of an adverse claimant. Davis v. Howe, Tex.Com.App., 213 S.W. 609, and Gibbs v. Lester, Tex.Com.App., 41 S.W.2d 28. In the last case cited the Commission of Appeals, with the approval of the Supreme Court, likewise held that a title to land perfected by limitations is as good as title by patent from the state. It was also there held that one may acquire title by limitation by having peaceable and adverse possession of land described by a recorded instrument, cultivating, using and enjoying the same for a period of ten years.

▓▓▓ A cotenancy is not an estate but it is a relationship existing between persons. Meaders v. Moore, Tex.Civ.App., 113 S.W.2d 689, affirmed 134 Tex. 127, 132 S.W.2d 256, 125 A.L.R. 817. Under this and other authorities cited no such relation has ever existed between appellee and appellant Max Bradshaw, who were not related, had never had any business transactions with each other and had never met each other until the day of the trial. There is no recitation in any of the foreclosure proceedings or in the sheriff's deed which can be construed as a recognition of any claim of title by appellant Max Bradshaw or any claim of his interest in the land. In fact, the contrary is there shown when and where it is charged that Mae Bradshaw was the owner of all of the one-half section of land and by those proceedings appellee divested her of all of the same. In the case of Hickman v. Ferguson, Tex.Civ. App., 164 S.W. 1085, 1087, writ refused, a contention was made by appellants that a man whose name was Davis was a cotenant of another whose name was Walling and for that reason the possession of the former could not be construed as adverse to the latter, just as appellants are here claiming. But appellants' contentions were there overruled and it was there held that appellees had acquired title under the ten year statute of limitations. In that case the court said: "Where two parties acquire an interest in land at different times and by different instruments, without any agreement or understanding with each other, though under the same title, they do not thereby become tenants in common. Roberts v. Thorn, 25 Tex. [728] 737, 78 Am.Dec. 552; Ripptoe [Rippetoe] v. Dwyer, 49 Tex. [498] 505; Dwyer v. Ripptoe [Rippetoe], 72 Tex. [520] 534, 10 S.W. 668."

In the case at bar appellant Max Bradshaw acquired whatever interest he may have had in the half section of land here involved as a legatee under his father's will, which was admitted to probate on December 19, 1924, while appellee Holmes acquired his original interest in the said land and the right of possession thereto through foreclosure proceedings, judgment and a sheriff's deed executed on November 1, 1938. It clearly appears

that the two parties acquired whatever interest they each had originally at different times and under different instruments and the evidence shows conclusively that no cotenancy ever existed between them by agreement or by any kind of an understanding between them.

Under the authorities cited and for the reasons stated, it is our opinion that appellant Max Bradshaw and appellee Holmes were not cotenants of the land here involved at any time. But, be that as it may, it was held in the case of Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352, 353, in accordance with a rule there announced to be well settled in this and most other states: "* * * that a conveyance by one cotenant to a stranger to the title, by an instrument purporting to pass the entire title in severalty and not merely the grantor's interest, when followed by entry of such stranger, claiming under such deed, into actual and exclusive possession, amounts to a disseisin of the other cotenants, and that such possession if continued for the statutory period will ripen into title." (Many authorities are there cited in support of the rule announced).

It must be conceded that Mae Bradshaw and Max Bradshaw were cotenants prior to the foreclosure suit in 1938 and that appellee was a stranger to the title. The evidence shows conclusively that appellee went immediately into actual and exclusive possession of all of the half section of land here involved and continuously held the same without being disturbed until this suit was filed. It is our opinion that the foregoing announced rule of law applies whether the conveyance has been voluntarily made by a cotenant or whether such a conveyance has been made by a foreclosure proceeding, judgment and deed as was done in the case at bar. The rule there announced is supported by the following additional authorities and many others: Eastham v. Gibbs, 58 Tex.Civ.App. 627, 125 S.W. 372; Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Republic Production Co. v. Lee, 132 Tex. 254, 121 S.W.2d 973; Broussard Trust v. Perryman, Tex.Civ. App., 134 S.W.2d 308, writ refused; Mau-

ritz v. Thatcher, Tex.Civ.App., 140 S.W.2d 303, writ refused. The latter case holds that in such a case actual notice of an adverse holding and disseisin need not be given to a cotenant but such notice may be constructive and will be presumed to have been brought home to him when the adverse occupancy and claim of title is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to a cotenant not in possession. It was also there held that the facts supported a claim of adverse possession under the ten year statute of limitations. In the Broussard Trust case a claim under the ten year statute of limitations was sustained where the holder claimed adverse possession by reason of a purchase of one-eighth interest of the realty at a sheriff's sale and thereafter acquired six-eighths additional interest by conveyance, and a claim of cotenancy was there overruled. The facts in the Republic Production Company-Lee case are somewhat analogous to the facts in the case at bar and the rules of law there announced apply to our facts here presented. When such rules of law are applied, the facts here presented constitute a disseisin or ouster of appellant Max Bradshaw even though appellee's foreclosure may have been void as to him and the factual situation here presented likewise constitutes a repudiation of any cotenancy relationship that might have existed. Cryer v. Andrews, 11 Tex. 170; McCook v. Amarada Petroleum Corporation, Tex.Civ. App., 93 S.W.2d 482; Buford v. Cole, Tex. Civ.App., 135 S.W.2d 145; Beauchamp v. Beauchamp, Tex.Civ.App., 239 S.W.2d 191. Notice of ouster where one cotenant is holding adversely to the other may be presumed from the facts and circumstances or acts of open and notorious hostility by the cotenant. Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81.

Appellants claim there was a toll in the ten year statute of limitation because of an alleged break of approximately three months in appellee's possession of the land in question during the year 1946. Without assigning such as an error in their brief as the rules provide, they likewise raise in

their written argument some question to the effect that Culpepper as a tenant did not attorn to appellee, Holmes, with the consent of appellant Max Bradshaw. But the trial court presumably found against them in these matters and appellants themselves admitted on page 23 on their brief that: "The Appellee, W. F. Holmes, remained in possession of the land involved through tenants from a date shortly after the date of the Sheriff's Deed to him, paid the taxes against the land, and collected the rents."

Concerning the question of actual notice on the part of appellant Max Bradshaw to the effect that all of the land here involved had been foreclosed upon by appellee, that he took possession thereof and was claiming it adversely, the evidence reveals that the said appellant was living with his mother and helping her to look after her business when she was served on June 30, 1938, as party defendant with a nonresident citation in the foreclosure suit with a certified copy of appellee's petition as party plaintiff attached thereto. The said appellant's mother, Mae Bradshaw, was therein summonsed to appear and answer said petition at the next term of the District Court in Deaf Smith County to be held on August 1, 1938. Appellant Max Bradshaw testified, in effect, that he remembered when his mother was served with such process; that he read the nonresident notice, together with a certified copy of appellee's petition attached thereto, and that he did nothing about it more than read these instruments. Appellee's petition as party plaintiff in the said suit alleged that defendant Mae Bradshaw was the owner of all of the one-half section of land here involved and he there described the same. Appellee further alleged therein that he was then filing an affidavit and bond in and for an attachment on and against all of the said land and in his prayer in the said petition he asked for a foreclosure of the attachment lien against all of the said land and for a decree ordering the same to be sold and for the proceeds to be applied to his alleged debt Mae Bradshaw owed him. Throughout all of the foreclosure proceedings it was charged that Mae Bradshaw owned all of the land here involved and appellee was

seeking to foreclose upon all of it to satisfy his debt. Appellant Max Bradshaw, who was taking care of his mother's business at that time, knew, from having read a copy of appellee's petition, that appellee charged that his mother owned all of the half section of land here involved and that he was seeking to foreclose an attachment lien upon all of the same to satisfy his debt, yet he did not file an answer or appear in court either in the interest of his mother or in behalf of any interest he may have then been claiming in the said land. Although duly served, Mae Bradshaw did not answer or appear in court and judgment was there rendered on August 2, 1938, for appellee for his debt in the sum of $4613.43 with the result heretofore stated.

Max Bradshaw was in possession of the land in question, had control of it and was receiving the rents and revenues therefrom until the foreclosure suit in 1938. After that he received no rents and revenues and had no further communications about his management of the said land. He knew he had not paid the taxes on the land since 1931 and he knew that appellee had filed suit that would dispossess him and his mother if prosecuted to a conclusion. He likewise knew that he and his mother had not filed any answer in the suit, had not appeared for trial in court and had not in any way resisted the prosecution of the suit. With knowledge of all these facts, Max Bradshaw did not seek any information about what had happened to the land in question. In so far as the record reflects, he did not even inquire of his old friends and neighbors, Mr. Betz and Mr. Gilmore, who owned land in Texas joining the land here involved, anything about the said land. He testified that Mr. Betz voluntarily told him in 1948 how the land was being used, but even then he did nothing about it until this suit was filed two years later. According to the record before us he manifested no interest in the land or any part of it for a period of more than ten years after appellee went into exclusive possession of same.

Based upon these facts it is our opinion that the trial court was justified in finding or at least in reasonably presuming

that Max Bradshaw was fairly put upon inquiry such as would constitute actual notice of appellee's adverse possession since 1938, and constructive notice existed from the time the foreclosure proceedings and deed were recorded in Deaf Smith County in 1938. It is likewise our opinion that the pleadings and the evidence, when viewed as a whole in its most favorable light, are sufficient to support the trial court's judgment. Appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.