**AMERICAN LIFE AND ACCIDENT INSUR-
ANCE COMPANY, Appellant,**

v.

*Floyd SMITH, Appellee.*

No. 43.

Court of Civil Appeals of Texas.

Tyler.

May 28, 1964.

T. G. Davis, Law Offices of Tom Bank-head, Carthage, for appellant.

James R. Strong, Long, Strong, Jackson & Strong, Carthage, for appellee.

MOORE, Justice.

This suit was originally brought by Floyd Smith, deceased, who died before trial. The appellee, Willie Belle Carter, Independent Executrix of the Estate of Floyd Smith, was substituted as plaintiff and continued the prosecution of this suit against appellant, American Life and Accident Insurance Company, in the County Court of Panola County, Texas, seeking recovery for hospital expenses incurred by deceased during his terminal illness under two separate policies of hospitalization insurance. Trial was before the court, without a jury, resulting in a judgment for appellee in the amount of $315.40 upon the policies, plus 12% penalty thereon in the amount of $37.80, and attorney fees in the amount of $250.00, from which judgment appellant has perfected this appeal.

The first policy issued to the deceased became effective on November 28, 1961. Part III, titled "EXCLUSIONS, LIMITA-TIONS AND REDUCTIONS," reads as follows:

" * * * any loss resulting wholly or in part from tuberculosis, cancer, anemia, diabetes, hernia, arthritis; hemorrhoids, high blood pressure, or any disease of the liver, gall bladder, heart or circulatory system, or any disease of any organ of the genitourinary system, shall be covered only if the cause thereof originates after this policy shall have been in continuous force for a period of six months from date of issue."

The second policy became effective March 28, 1962. Under Part V, titled "REDUCTIONS AND EXCEPTIONS," paragraph 3 reads as follows:

" * * * any loss resulting wholly or in part from tuberculosis, cancer, anemia, diabetes, hernia, arthritis,

hemorrhoids, high blood pressure, or any disease of the liver, gall bladder, heart or circulatory system, or any disease of any organ of the genitourinary system, shall be covered only if the cause thereof originates after this policy shall have been in continuous force for a period of six months from date of issue."

The trial court filed findings of fact and conclusions of law which, among others, found that the confinement of Floyd Smith to the hospital from December 31, 1962, to the date of his death on January 17, 1963, was caused by a sickness, the cause of which originated while the policies above referred to were in force and effect and that the cause of the deceased's sickness originated more than thirty days and more than six months after the effective date of each of said policies of insurance.

The undisputed testimony shows that deceased had trouble with his heart and circulatory system in October and November, 1961, for which he was hospitalized for a period of approximately seven days; that thereafter on November 28, 1961, he purchased the first policy from appellant; that the second policy was purchased on March 28, 1962; that the application on the second policy revealed the fact of previous heart trouble; that after being discharged from the hospital in November, 1961, he was treated for a chronic heart condition until about three months before being admitted to the hospital for the present illness.

A summary of the testimony of Doctor W. C. Smith, who was deceased's treating physician during his terminal illness, and the only medical witness, shows that on the afternoon of the 31st of December, 1962, deceased came to his office at 2 or 3 o'clock with a complaint of nausea, vomiting and abdominal pain, acute and severe. He urged him to go to the hospital but he was reluctant to enter the hospital. He testified that he thought at the time deceased had an obstructing ulcer and gave him medication to relieve his nausea and he returned home.

Late in the evening or that night his condition worsened and he was admitted to the hospital; that when he was examined after being admitted to the hospital he found on x-ray that deceased had a non-functioning gall bladder, accompanied by nausea and vomiting. That he developed a fever and then developed what he thought to be enumnitis or bronchitis at least. He also found that deceased had heart changes which signified chronic arteriosclerosis. He testified that it was his impression that the nausea and vomiting caused a strain upon his heart which, because of lack of heart reserve, threw him into heart failure. He further testified that the cause of the nausea and vomiting was the non-functioning gall bladder. He testified that, from a medical standpoint, deceased had reduced cardiac reserve, else he would not have gone into heart failure as a result of his acute illness; that on the last admission the electrocardiogram, as compared to the one in 1961, showed improvement of the schemic condition but continued to show some evidence of chronic heart disease; that he had an enlarged heart; had fluid on his lungs; his liver was enlarged, had considerable gas and nausea and pain in the upper abdomen; that before admission to the hospital, he had not diagnosed his illness as heart failure; that after being admitted to the hospital he was given treatment for all of his ailments; and that in his opinion the acute illness resulting from the non-functioning gall bladder causing nausea, vomiting and straining, finally precipitated heart failure, causing his death seventeen days after confinement.

Appellant contends that since deceased's heart and circulatory disease originated prior to the effective date of either of the policies that the company is not liable for the loss occasioned by hospitalization because such hospitalization resulted wholly at least or in part from a disease of the heart or circulatory system which originated before the effective date of the policies.

Appellee, on the other hand, does not deny that deceased had trouble with his heart and circulatory system and was hospital-ized therefor in October, 1961, but contends that the hospitalization during his terminal illness did not result wholly or in part from a disease of the heart or circulatory system but was a direct result of a non-functioning gall bladder and enlarged liver which caused a gastro-intestinal disturbance, bringing on nausea and vomiting, the effect of which served only to further weaken the heart, precipitating the death of deceased.

Appellant assigns four points of error, wherein it is contended that there is no evidence to support the trial court's finding that the sickness, resulting in the hospitalization, originated while the policies were in force and effect and that such sickness originated more than six months after the effective dates thereof, and alternatively that such findings are against the overwhelming weight and preponderance of the evidence.

There being no evidence of any pre-existing disease of the gall bladder or liver, and the policies having been in effect for more than six months before this sickness originated, such sickness and hospitalization, if caused by a gall bladder or liver ailment, would have been covered by the terms of the policies. But, appellant having plead an exclusion, the burden was on the appellee to prove that the hospital expenses, insured against by the policies, were not wholly or partly a result of a disease of the heart or circulatory system. Although the broad findings of fact as filed by the trial court did not specifically find that the loss did not result wholly or partly from a disease of the heart or the circulatory system, since the court found that the sickness causing the hospitalization was covered by the policy and thereupon entered judgment for the appellee, it will be presumed that the court found that such loss did not result wholly or partly from the excluded risks and the judgment must be upheld if same is supported by any evidence of probative force. In considering the sufficiency of the evidence in support of both

the expressed findings and presumed findings under the "no evidence" points, we are obligated to construe the evidence in the light most favorable to the judgment and disregard all evidence to the contrary, indulging every legitimate conclusion which tends to uphold the judgment. Bradshaw v. Holmes, Tex.Civ.App., 246 S.W.2d 296; Dunning v. Bibb, Tex.Civ.App., 339 S.W.2d 358. See also Thompson v. Lee Roy Crawford, 149 Tex. 357, 233 S.W.2d 295.

■■ The medical testimony established, without doubt, that the deceased died as a result of a coronary occlusion, commonly referred to as heart failure. But the cause of death is not the question here. The question is whether or not the hospitalization of deceased during his terminal illness resulted from a disease covered by the policy and, if so, whether or not it was wholly or partly the result of a disease of the heart or circulatory system. The testimony of Doctor Smith, we think, provided sufficient evidence to authorize the trial court to find that the hospitalization of the deceased and the resulting loss was caused by the gall bladder and liver ailment and the complications flowing therefrom and was not caused either wholly or partly by a disease of the heart or circulatory system. Although the doctor testified that at the time deceased was hospitalized he was suffering with a chronic heart and circulatory disease, it must also be remembered that the doctor testified that the gall bladder and liver ailment, in his opinion, was so acute that it aggravated the heart and but for the gall bladder and liver ailment there would have been nothing to precipitate the failure of the heart. In other words, as we view the testimony, we believe there was sufficient evidence to form the basis for the trial court's conclusion that the real or compelling cause of the hospitalization and the resulting loss was the acute gall bladder and liver ailment, which, incidentally, after having manifested itself to an acute degree, naturally aggravated and inflamed other organs of the body, including the heart. Seldom does one have a serious physical ailment not complicated by other diseases or physical disturbances; and to hold that proof of a pre-existing disease, or some concurrent ailment, would prevent recovery of hospitalization benefits caused wholly by another disease or the aggravating effects flowing therefrom, during the period when the last disease was the sole then existing cause of the hospitalization, would require a strict and narrow construction of the policy by which we would reach an unreasonable result. The terms and conditions of the policy, in our opinion, are not subject to such a construction. American Casualty & Life Co. v. Butler, Tex.Civ.App., 215 S.W.2d 392; National Life Insurance Co. v. Bean, 15 Ga.App. 661, 84 S.E. 152.

■■ Though appellee had the burden of proving that the hospitalization loss did not result in whole or in part from an excluded disease, appellee did not have the burden of proving that the excluded disease had no effect whatsoever upon the hospitalization loss. The question as to whether or not the hospitalization loss was partly the result of an excluded disease, is a question of causation; the question being whether or not the excluded disease contributed to the loss to such an extent that it can be said to have been an efficient, exciting or contributing cause, as distinguished from a mere trivial cause. Appellee, of course, had the burden of showing that the excluded disease was not a contributing cause of the hospitalization loss. Whether such excluded disease was a contributing cause is a question of fact to be determined by the court or jury. Texas Indemnity Insurance Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026; Globe Indemnity Co. v. Matthews, 5 Cir., 131 F.2d 433. The evidence raised the issue and the trial court, being the trier of the fact, concluded that the hospitalization loss did not result partly from the excluded disease. Viewing the evidence in the light most favorable to the judgment and disregarding all evidence to the contrary, as we are required to do, we are of the opinion that we cannot say that there is no evidence to support the judgment and therefore

appellant's points one ·and three are overruled.

■ Consideration has been given appellant's points two and four, contending that the evidence is so contrary to the great weight and preponderance of the evidence as to be so manifestly wrong and unjust, and after having considered and weighed all of the evidence in the case, as we are required to do under the ruling in In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660, we have concluded that the judgment is not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust and therefore overrule appellant's points two and four.

The judgment is affirmed.